IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DAMEON T. MILES,

     Petitioner,

v.                                                                  Civil Action No. 3:10cv254

GENE JOHNSON,

     Respondent.

## MEMORANDUM OPINION

Petitioner Dameon T. Miles, a Virginia inmate proceeding *pro se*, brings this petition for

a writ of habeas corpus ("Petition") pursuant to 28 U.S.C. § 2254.[1] (Docket No. 1.) Miles

challenges his convictions for robbery, malicious wounding, possession of imitation cocaine with

intent to distribute within 1,000 feet of school property, and possession with intent to distribute

imitation cocaine. By Memorandum Opinion and Order dated November 18, 2010, the Court

granted Respondent's Motion to Dismiss with respect to two claims in Miles's § 2254 Petition,[2]

---

[1] 28 U.S.C. § 2254(a) states in relevant part:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall
> entertain an application for a writ of habeas corpus in behalf of a person in custody
> pursuant to the judgment of a State court only on the ground that he is in custody in
> violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

[2] The Court dismissed the following claims as barred by the statute of limitations:

Claim One:    Prosecutorial misconduct in that the prosecutor failed to recommend
               the sentence agreed upon in a plea agreement.

but simultaneously granted Miles's Petition to Amend to add a third claim. (Docket Nos. 19, 20.) Specifically, Claim Three asserts: "Trial counsel had a conflict of interest because trial counsel previously had represented Larry Tidwell, Jr., the victim of Miles's robbery." (Nov. 18, 2010 Mem. Op. 7.) Respondent filed a Motion for Summary Judgment, seeking summary judgment in his favor on Claim Three. (Docket No. 29.) Miles fully responded to the motion. (Docket Nos. 34, 35, 37.)[3] The matter is ripe for adjudication. Jurisdiction exists under 28 U.S.C. §§ 636(c) and 2254. For the reasons that follow, the Court will GRANT Respondent's Motion for Summary Judgment.

## I. Standard of Review

Summary judgment under Federal Rule of Civil Procedure 56 is appropriate only when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Once a party has properly filed evidence supporting the motion for summary judgment, the nonmoving party may not rest upon mere allegations in the pleadings, but must instead set forth specific facts illustrating genuine

---

Claim Two:    Ineffective assistance of counsel in that counsel erroneously advised petitioner to plead guilty and misled petitioner into withdrawing his motion to withdraw his guilty plea.

(Nov. 18, 2010 Mem. Op. 3; *see id.* at 3-7.)

[3] Because Respondent failed to do so in his Motion for Summary Judgment, the Court subsequently provided Miles with appropriate *Roseboro* notice. (Docket No. 36); *see Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). Miles later filed a statement indicating his satisfaction with his initial responses. (Docket No. 37.)

issues for trial. *Celotex,* 477 U.S. at 322-24. These facts must be presented in the form of exhibits and sworn affidavits. Fed. R. Civ. P. 56(c).

A court views the evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Anderson,* 477 U.S. at 255. Whether an inference is reasonable must be considered in conjunction with competing inferences to the contrary. *Sylvia Dev. Corp. v. Calvert County,* 48 F.3d 810, 818 (4th Cir. 1995). Nonetheless, the nonmoving "party is entitled 'to have the credibility of his evidence as forecast assumed.'" *Miller v. Leathers,* 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc) (*quoting Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir. 1979)). Ultimately, the court must adhere to the affirmative obligation to bar factually unsupportable claims from proceeding to trial. *Felty v. Graves-Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir. 1987) (*citing Celotex,* 477 U.S. at 323-24).

"Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison,* 431 U.S. 63, 73-74 (1977) (holding that representations of a defendant during a plea hearing are a formidable barrier to subsequent incongruous assertions in a habeas proceeding) (*citing Machibroda v. United States,* 368 U.S. 487, 495-96 (1962)). Therefore, "a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement . . . without explaining the contradiction or attempting to resolve the disparity." *Cleveland v. Policy Mgmt. Sys. Corp.,* 526 U.S. 795, 806 (1999) (citing cases).

3

Here, the parties have submitted an affidavit from trial counsel, Michael D. Kmetz, and an affidavit from Miles.[4]  The Court also has before it statements made under oath by Miles during the plea hearing and sentencing hearing, as well as a Stipulation of Facts entered into during the plea proceedings, agreed to under oath by Miles, and signed by Miles, Kmetz, and the Commonwealth's Attorney.  Stipulation of Facts, *Commonwealth v. Miles*, No. CR06003171 (Va. Cir. Ct. filed Nov. 13, 2006) (hereinafter "Stipulation of Facts").  The Stipulation of Facts and the representations made by Miles under oath will stand as "a formidable barrier" against any of Miles's contradictory claims.  *Blackledge*, 431 U.S at 74.  Thus, in the absence of a convincing explanation resolving the disparity, any contrary assertions will not be considered.

## II. Summary of Pertinent Facts[5]

### A.      The Charges

On June 21, 2006, officers with the City of Norfolk Police Department arrested Miles after he sold suspected cocaine to an undercover police officer.  Subsequent to his arrest, Miles confessed to his involvement in an assault of Larry Tidwell occurring on June 17, 2006.  Miles also admitted to taking a ring from Tidwell and to witnessing Tidwell's murder.  The Circuit Court of the City of Norfolk ("Circuit Court") appointed Kmetz to represent Miles on the charges

---

[4] Miles objects to the use of Kmetz's affidavit, contending that "it is a perjured statement" and that he "is unable to cross examine the Affidavit to allow an independant [sic] analysis of it's [sic] veracity."  (Pet'r's Traverse & Objections 2.)  (Docket No. 34.)  However, Miles fails to identify any plausible basis to strike Kmetz's affidavit.

[5] The facts set forth in this section are established for purposes of summary judgment. Because the Court ultimately grants Respondent's Motion for Summary Judgment, the Court recites and views these facts in the light most favorable to Miles, the nonmoving party. *Anderson*, 477 U.S. at 255.

stemming from his arrest. Several years prior to his appointment on Miles's case, Kmetz had represented Tidwell in a criminal matter.[6]

During their first meeting, Miles informed Kmetz that he had initially confronted Tidwell for two reasons: (1) to respond to Tidwell's "rude and obnoxious behavior" toward a woman named Mildred Tatum "and his presenting of a hand gun" and, (2) to retrieve a ring that Tidwell had previously taken from Miles. (Miles Aff. 1.)[7] (Docket No. 35.) Kmetz said he would investigate Miles's case and prepare a defense.

On October 2006, a grand jury returned four indictments in the Circuit Court charging Miles with the following: (1) robbery, in violation of Va. Code § 18.2-58; (2) malicious wounding with the intent to maim, disfigure, disable, or kill, in violation of Va. Code § 18.2-51; (3) distribute or possess with intent to distribute a controlled substance, imitation controlled substance, or marijuana within 1,000 feet of school property, in violation of Va. Code § 18.2-255.2; and, (4) possession of cocaine with intent to distribute, in violation of Va. Code § 18.2-248(C).

On November 12, 2006, the day before his scheduled trial, Kmetz met with Miles and encouraged him to plead guilty, stating that there were no defenses to the charges. In light of

---

[6] Miles has submitted an uncertified copy of a Sentencing Order from the Circuit Court reflecting that Kmetz represented Tidwell on charges, and ultimately convictions, of robbery and use of a firearm in commission of a felony from 2002 through 2003.

Kmetz avers that he disclosed his prior representation of Tidwell to Miles and that Miles did not object to Kmetz's continued representation. On the other hand, Miles contends that Kmetz never disclosed his prior representation of Tidwell and that Miles did not discover this prior representation until 2010. Nevertheless, given the Court's conclusion that Kmetz did not suffer from an actual conflict of interest that adversely affected his performance, this dispute does not involve a material fact which would foreclose summary judgment.

[7] Because this document does not include page numbers, the Court identifies the pages as numbered by CM-ECF.

5

Miles's confession to the police, Kmetz advised Miles to plead guilty and cooperate with the

Commonwealth in the ongoing murder investigation.  Miles then informed Kmetz that he had

originally declined to make a statement and had requested a lawyer, but the police continued to

interrogate him.  Despite this new information, Kmetz advised Miles to plead guilty and

cooperate with the Commonwealth.

### B.    The Plea Hearing

On November 13, 2006, Miles appeared before the Circuit Court and entered pleas of

guilty to all four charges without any agreement as to sentencing.  The parties agreed on the

following Stipulation of Facts, acknowledging that the Commonwealth would have presented the

following evidence had the matter gone to trial.

> On June 17, 2006, Norfolk police officers and paramedics responded to the
> 2400 block of E. Princess Anne Road in reference to a call that there was a man
> bleeding and lying in a hallway area at an apartment complex.  Upon arrival, the
> victim, Larry Tidwell, was found partially naked, unresponsive and lying in a pool
> of blood.  He appeared to have been assaulted and had sustained a gun shot wound
> to his thigh.  Tidwell was pronounced at the scene and an autopsy was subsequently
> performed.  At autopsy it was determined that, while Tidwell had died as a result of
> the gunshot wound to his thigh which transected the femoral artery and vein,
> responsible for transporting blood to and from the heart, it was also determined that
> he had massive and significant injuries to the face and head. . . .
> On June 21, 2006, members of the Norfolk Police Department were working
> in an under cover capacity in the city of Norfolk.  At approximately 5:55 pm an
> undercover officer pulled into the Spartan Market shopping center located in the
> 1000 block of Park Avenue, spoke to a black male, and asked him if he had any
> "hard," referring to the slang term for cocaine.  The black male indicated that he did
> not have any but pointed to [Miles], who was inside of the store.  When [Miles]
> exited the store, he walked over to the officer's car and asked what he needed.  The
> officer responded that he only had a ten and asked [Miles] to "hook him up."  [Miles]
> then told the officer to wait where he was and walked behind the shopping center.
> After a short period of time, [Miles] returned to [the] scene, reached into the vehicle,
> retrieved $10.00 in pre-recorded Norfolk Police funds and asked, "Are you the man?"
> After being told that he was not a police officer, [Miles] said, "It's in your lap."  The
> officer then noticed a clear plastic baggy of suspected cocaine on his lap.  The area

where the sale occurred is located 32 feet from Booker T. Washington High School. While pulling away from the area, the officer notified the surveillance team that the buy had occurred, and the team subsequently arrested [Miles], who was still in possession of the pre-recorded police funds.

. . . .

After being arrested on the drug charge, officers spoke to [Miles] about the assault on Tidwell as it had occurred in the same general area where [Miles] had been arrested. After being advised of his legal rights and waiving them, [Miles] admitted that he had assaulted the victim by hitting him with his hands and kicking him and hitting him in the head with a fake gun the victim had had. [Miles] also named the other parties who had been involved in the attack. [Miles] admitted that, during the incident, he took a ring from the victim's finger and kept it. Finally, he admitted that he also knew about the murder as he had been an eyewitness and named the involved party.

Stipulation of Facts 1-2.

Miles admitted he inflicted Tidwell's multiple blunt force head injuries, including a

laceration on the crown of the head with fragmented plastic debris embedded in the wound.

Miles also acknowledged that he caused the other blunt force injuries on Tidwell's back, upper

extremities, and hands.

After stipulating to the evidence, the Circuit Court and Miles engaged in the following

colloquy:

> Q. Have you and Mr. Kmetz had time to talk about the charges, what the Commonwealth's got to prove . . . to prove all four of these charges?
> A. Yes, ma'am.
> Q. And possible defenses, did you have enough time to talk about those?
> A. Yes, ma'am.
> Q. Have you talked to Mr. Kmetz about whether to plead guilty or not?
> A. Yes, ma'am.
> Q. After you talked to him, did you reach your own decision to plead guilty?
> A. Yes, ma'am.
> Q. Are you pleading guilty freely and voluntarily?
> A. Yes, ma'am.

> Q.      Has anyone connected with your arrest and prosecution, let me give you examples, Mr. Kmetz, [the Commonwealth's Attorney], the police, the sheriffs, anybody in the court system threatened or forced you in any way at all to plead guilty to these charges?
>
> A.      No, ma'am.
>
> Q.      All right.  Are you pleading guilty admitting you are, in fact, guilty of the four offenses charged?
>
> A.      Yes, ma'am.
>
> Q.      All right.  And there is nothing being offered to you as an incentive, in other words, you haven't agreed on the sentence?
>
> A.      Yes, ma'am.
>
> Q.      That's correct?  There is no agreement?
>
> A.      No, ma'am.
>
> Q.      No promises?
>
> A.      No promises.
>
> Q.      Okay.  Are you pleading guilty admitting you're, in fact, guilty of the offenses charged?
>
> A.      Yes, ma'am.

Nov. 13, 2006 Plea Hr'g Tr. 21:3-22:14.[8]  Miles confirmed that he understood the trial rights he

waived in pleading guilty, including the right to cross-examine the Commonwealth's witnesses,

the right to put on a defense, the right to call witnesses on his own behalf, and the right to appeal.

---

[8] Directly contradicting his sworn statements, Miles now contends that an agreement as to sentencing existed.  He claims that, in exchange for his cooperation on the murder investigation, the Commonwealth's Attorney agreed not to oppose a sentence near the low end of the sentencing guidelines.  Because Miles has failed to offer an adequate explanation for this controversial conclusory statement, it will not be considered by the Court.  *See Cleveland*, 526 U.S. at 806.

Two recent and factually distinguishable decisions by the Supreme Court of the United States discussing the Sixth Amendment right to counsel during the plea-bargaining process do not alter the Court's analysis.  *See Lafler v. Cooper*, __ S. Ct. __, No. 10-209, 2012 WL 932019 (Mar. 21, 2012); *Missouri v. Frye*, __ S. Ct. __, No. 10-444, 2012 WL 932020 (Mar. 21, 2012). These cases address instances where "inadequate assistance of counsel caused nonacceptance of a plea offer and further proceedings led to a less favorable outcome." *Lafler*, 2012 WL 932019, at *3.  The Supreme Court made clear that these cases do not alter the analysis for cases "where a defendant complains that ineffective assistance led him to accept a plea offer as opposed to proceeding to trial." *Frye*, 2012 WL 932020, at *9.  Further, they do not lift the formidable barrier applicable to claims which contradict prior representations made under oath.

He also acknowledged that he faced a total maximum sentence of life plus 65 years on the four

charges. Finally, Miles stated that he was entirely satisfied with Kmetz's services as his lawyer.

The Circuit Court determined that Miles's pleas of guilt were freely, voluntarily, and

intelligently entered and found that the facts were sufficient to support the charges. The Circuit

Court found Miles guilty of robbery and malicious wounding, but took the drug charges under

advisement until the certificate of analysis had been returned.

### C.    The Sentencing Hearing

The day before his sentencing hearing, Miles, through counsel, filed a Motion to

Withdraw Pleas, seeking to withdraw his guilty pleas because he was under the influence of

alcohol and cocaine at the time of the robbery and malicious wounding. Motion to Withdraw

Pleas 1, *Commonwealth v. Miles*, No. CR06003171 (Va. Cir. Ct. filed Nov. 1, 2007).

On November 2, 2007, Miles appeared before the Circuit Court for sentencing. Miles

told the Circuit Court that he no longer wished to proceed on his Motion to Withdraw Pleas and

wanted the Circuit Court to proceed with sentencing.[9] Because the certificate of analysis

indicated that the seized suspected cocaine was not a controlled substance, the Circuit Court

found Miles guilty of distribute or posses with intent to distribute an imitation controlled

substance within 1,000 feet of school property as charged and guilty of possession with intent to

---

[9] Miles claims he asked Kmetz to file a motion to withdraw his pleas based on a different reason. According to Miles, the Commonwealth's Attorney was not satisfied with his cooperation and decided that she would oppose any recommended sentence at the low end of the sentencing guidelines. Miles asked Kmetz to file a motion to withdraw his pleas based on this alleged breach of the plea agreement as to sentencing. Miles contends he withdrew this motion only after the Commonwealth's Attorney again agreed to abide by her end of the plea agreement. However, as discussed earlier, the allegations surrounding this plea agreement as to sentencing directly contradict Miles's sworn statements and will not be considered by the Court. *See infra* note 8.

distribute imitation cocaine, a lesser included offense. Sentencing Order, *Commonwealth v.*

*Miles*, No. CR06003171 (Va. Cir. Ct. filed Nov. 20, 2007) (hereinafter "Sentencing Order").

Miles testified on his own behalf at the sentencing hearing, again admitting his

involvement in the assault of Tidwell:

> Q. Mr. Miles, when this event occurred, you had been drinking and using cocaine?
> A. Yes, sir.
> . . . .
> Q. [Y]ou fully acknowledge via your guilty pleas that you beat Larry Tidwell?
> A. Yes, sir.
> Q. And you used the gun that he had that was a plastic gun, a fake gun, if you will. You snatched that from him and used that to beat him?
> A. Yes.
> Q. And you admit that that was absolutely wrong?
> A. Yes.
> Q. Criminal?
> A. Yes. I take full responsibility.

Nov. 2, 2007 Sentencing Hr'g Tr. ("Sentencing Hr'g Tr.") 9:7-10:2.

> Q. . . . [Y]ou do acknowledge that you were there, and you saw him as he was moaning on the ground after the beating, correct?
> A. Yes, ma'am.
> Q. And it was a group beating, correct?
> A. Yes, ma'am.
> Q. You and several other individuals?
> A. Yes, ma'am.

Sentencing Hr'g Tr. 13:21-14:3. Miles further acknowledged that he witnessed the shooting

resulting in Tidwell's death, but contended he did not take part in the shooting. Miles admitted

that while he tried to cooperate with the police to identify the shooter, his recollection of events

contained various inaccuracies. Largely due to these inaccuracies, the Commonwealth's

Attorney decided not to prosecute the person identified by Miles as the shooter.

While he admitted to taking a diamond ring off Tidwell's finger, Miles claimed that the ring belonged to him:

> Q.     Mr. Miles, so then you do acknowledge, even today, that you took a diamond ring off of the victim's finger, correct?
> A.     Yes. But in my statement, I did mention that Mr. Tidwell did pull a gun on me and ask me to give it up.
> Q.     Well, in your statement, you actually say that you pulled the ring – you took the ring off of his finger?  You robbed from him, correct?
> A.     But the ring was actually my ring.
> Q.     It was your ring?
> A.     Yes, ma'am.
> Q.     Oh, now it was your ring?
> A.     No.  It was my ring the whole time.
> Q.     So he put it on his finger, and you were able to grab it back off of his finger?  Is that what you're saying?
> A.     Yes, ma'am.

Sentencing Hr'g Tr. 12:4-21.

The discretionary guidelines in Miles's case recommended between thirteen years and nine months to twenty-one years and seven months, with a midpoint of eighteen years and seven months.  The Commonwealth's Attorney argued for a sentence at the high end of the guidelines, while Kmetz argued for a sentence at the low end.  Both parties acknowledged that no plea agreement as to sentencing existed.  The Circuit Court sentenced Miles to a 25-year active sentence of imprisonment.[10]  After sentencing, Kmetz refused to file an appeal.

---

[10] The Circuit Court sentenced Miles to fifty years of imprisonment on the robbery charge with forty years suspended.  For the malicious wounding charge, Miles received twenty years, with ten years suspended.  The Circuit Court imposed a five-year sentence of imprisonment for the possession with the intent to distribute imitation cocaine.  Finally, the Circuit Court sentenced Miles to five years of imprisonment suspended in its entirety for the possess with intent to distribute imitation cocaine within 1,000 feet of school property.  Sentencing Order.

### III. Analysis

#### A. Applicable Law

The Sixth Amendment guarantee of effective assistance of counsel "'requires meaningful compliance with the duty of loyalty and the duty to avoid conflicts of interest, and a breach of these basic duties can lead to ineffective representation.'" *United States v. Nicholson*, 475 F.3d 241, 249 (4th Cir. 2007) ("*Nicholson I*") (*quoting United States v. Tatum,* 943 F.2d 370, 375 (4th Cir. 1991)). "When a petitioner premises his ineffective assistance claim on the existence of a conflict of interest, the claim is subjected to the specific standard spelled out in *Cuyler v. Sullivan,* 446 U.S. 335 (1980)." *Id.* (parallel citations omitted). Specifically, "in order to prevail on an actual conflict of interest claim, [the petitioner must show] that (1) petitioner's lawyer operated under a 'conflict of interest' and (2) such conflict 'adversely affected his lawyer's performance.'" *United States v. Nicholson*, 611 F.3d 191, 195 n.2 (4th Cir. 2010) ("*Nicholson II*") (*quoting Sullivan*, 446 U.S. at 348). "If the petitioner makes this showing, prejudice is presumed and nothing more is required for relief." *Id.* at 205 (*citing Sullivan*, 446 U.S. at 349-50).

Nevertheless, "[a]nalysis of claims of actual conflicts of interest frequently do not proceed in two distinct steps; rather '[t]he two requirements . . . are often intertwined.'" *Jones v. Polk*, 401 F.3d 257, 267 (4th Cir. 2005) (*quoting Tatum,* 943 F.2d at 375) (second alteration and omission in original). This is so because an actual conflict of interest means "a conflict *that affected counsel's performance*–as opposed to a mere theoretical division of loyalties." *Mickens v. Taylor*, 535 U.S. 162, 171 (2002). Thus, the Supreme Court of the United States emphasized that "'the *Sullivan* standard is not properly read as requiring inquiry into actual conflict as

12

something separate and apart from adverse effect. An "actual conflict," for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance.'" *Id.* at 172 n.5 (*quoting Holloway v. Arkansas*, 435 U.S. 475, 482 (1978)); *see Nicholson II*, 611 F.3d at 195 n.2.

To establish a conflict of interest, Miles must demonstrate that his and Kmetz's "'interests diverged with respect to a material factual or legal issue or to a course of action.'" *Nicholson II*, 611 F.3d at 215 (*quoting Nicholson I*, 475 F.3d at 249). To establish an adverse effect, Miles must satisfy, by a preponderance of the evidence, the standard announced in *Mickens v. Taylor*, 240 F.3d 348 (4th Cir. 2001). *Nicholson I*, 475 F.3d at 251-52 (*citing Mickens*, 240 F.3d at 361, *aff'd*, 535 U.S. 162 (2002)).

> First, the petitioner must identify a plausible alternative defense strategy or tactic that his defense counsel might have pursued. Second, the petitioner must show that the alternative strategy or tactic was objectively reasonable under the facts of the case known to the attorney at the time of the attorney's tactical decision. In the language of *Tatum,* the petitioner must show that the alternative strategy or tactic was "clearly suggested by the circumstances." *Tatum*, 943 F.2d at 376. Finally, the petitioner must establish that the defense counsel's failure to pursue that strategy or tactic was linked to the actual conflict.

*Mickens*, 240 F.3d at 361. The petitioner may prove the link in either of two ways: "(1) by 'establish[ing] that the alternative defense was inherently in conflict with . . . the attorney's other loyalties or interests' . . . , or (2) by otherwise showing that the alternative defense was 'not undertaken due to' those other loyalties or interests." *Nicholson II*, 611 F.3d at 212 (*quoting Freund v. Butterworth*, 165 F.3d 839, 860 (11th Cir. 1999) (en banc)) (alteration and first omission in original).

13

**B.    Miles's Conflict of Interest Claim Fails**

Miles contends that Kmetz operated under a conflict of interest due to his prior representation of Tidwell which adversely affected Kmetz's performance as demonstrated by Kmetz's failure to: (1) conduct any pretrial investigation before advising Miles to plead guilty; (2) file a motion to suppress the confession unlawfully coerced from Miles; (3) challenge the malicious wounding charge by presenting a self-defense argument; (4) challenge the robbery charge despite Miles's claim that the ring belonged to him; (5) investigate the veracity of Miles's information before advising Miles to plead guilty and cooperate; (6) move to withdraw Miles's guilty pleas as requested by Miles; and, (7) file an appeal.

However, considering the record before the Court, Miles has failed to demonstrate that Kmetz's previous and completed representation of the deceased victim on unrelated criminal charges ever developed into an actual conflict of interest. Instead, the record demonstrates that the alternative strategies identified by Miles were objectively unreasonable under the facts known to Kmetz and/or that Kmetz's decision not to pursue these alternative strategies was wholly unrelated to his prior representation of Tidwell. No evidence before the Court suggests that Kmetz had divided, inconsistent loyalties or had otherwise gained confidential information from his previous representation of Tidwell that hampered him from vigorously advocating for Miles's best interests. *Cf., Nicholson II*, 611 F.3d at 216 (finding an actual conflict of interest where trial counsel failed to make a self-defense departure motion on behalf of the defendant while simultaneously representing the alleged aggressor on criminal charges); *Stephens v. Branker*, 570 F.3d 198, 213 (4th Cir. 2009) (finding no actual conflict of interest where trial counsel represented the defendant in a criminal matter in the Superior Court of Johnston County, North

14

Carolina while simultaneously representing the Sheriff of Johnston County in an unrelated civil matter); *Rubin v. Gee*, 292 F.3d 396, 398 (4th Cir. 2002) (finding an actual conflict of interest where two attorneys "in the aftermath of a crime schooled their client in the tactics of evasion" and then "took cover as part of the defense team" to avoid criminal indictment); *Mickens*, 240 F.3d at 362 (finding no actual conflict of interest where trial counsel represented the defendant in a capital murder case after having just previously represented the victim on an unrelated criminal charge). Ultimately, Miles fails to demonstrate that a conflict of interest adversely affected Kmetz's representation.[11]

### 1.   Failure to Conduct Any Pretrial Investigation

Miles first contends that due to the conflict of interest, Kmetz failed to conduct any pretrial investigation prior to advising Miles to plead guilty. However, with one exception,[12] Miles does not allege with any specificity what investigation should have been conducted.[13] Regardless, Miles's conclusory allegations fail to demonstrate that Kmetz's alleged failure to

---

[11] The Court notes that Miles previously asserted an ineffective assistance of counsel claim that the Court found barred by the statute of limitations. While the Court allowed Miles to amend his § 2254 Petition to include this conflict claim based on newly discovered evidence, it appears that Miles now improperly attempts to use this conflict claim to bootstrap wholly unrelated ineffective assistance of counsel claims in an attempt to circumvent the statute of limitations. Miles raises many challenges to Kmetz's representation, but entirely fails to present evidence suggesting that Kmetz's prior relationship with Tidwell had any impact on Kmetz's advocacy of Miles's best interests.

[12] Miles identifies one witness who should have been interviewed. Because this witness relates to Miles's self-defense argument, the Court will discuss Kmetz's failure to interview her below. *See supra* Part III.B.3.

[13] The conclusory nature of Miles's claim makes the application of the *Mickens* three-part test difficult and arguably warrants dismissal. *See United States v. Lemaster*, 403 F.3d 216, 220-21 (4th Cir. 2005); *Raines v. United States*, 423 F.2d 526, 531 (4th Cir. 1970); *cf. Bassette v. Thompson*, 915 F.2d 932, 940-41 (4th Cir. 1990).

investigate stemmed from or had any connection whatsoever to Kmetz's prior representation of Tidwell.[14] *See Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (stating that the nonmoving party cannot avoid summary judgment by relying on "[c]onclusory or speculative allegations"); *Harper v. Keller*, No. 1:09cv736, 2011 WL 1431526, at *6 (M.D.N.C. Apr. 14, 2011).

Further, considering the strength of the Commonwealth's evidence, Kmetz's advice to forgo trial, plead guilty, and cooperate with the Commonwealth cannot be deemed objectively unreasonable. Specifically, Miles admitted that he beat the victim until he lay moaning on the ground and then watched as a third party murdered the victim, thus possibly implicating Miles in that murder. *See Jones v. Commonwealth*, 157 S.E.2d 907, 909 (Va. 1967) (discussing criminal liability for an aider and abettor or principal in the second degree).

### 2.   Failure to File a Motion to Suppress Miles's Confession

Miles next contends that he informed Kmetz that his confession had been unlawfully coerced after he invoked his right to remain silent and his right to counsel. Miles claims that, despite this knowledge, Kmetz failed to file a motion to suppress due to the conflict of interest. Miles however fails to make any showing that Kmetz failed to pursue suppression *due* to his prior representation of Tidwell or that making the suppression argument would inherently conflict with his loyalties to Tidwell. *See United States v. Lewis*, No. 3:07cr310, 2011 WL 5325660, at *3 (E.D. Va. Nov. 3, 2011).

---

[14] Indeed, Miles's conflict of interest claim fails largely because he relies heavily on conclusory and speculative allegations to avoid summary judgment. (*See, e.g.*, Pet'r's Traverse & Objections 3-4 (attempting to demonstrate a linkage by simply reciting the phrase "due to his conflict").)

3.      **Failure to Challenge the Malicious Wounding Charge Based on Self-Defense**

Third, Miles claims that Kmetz failed, due to a conflict of interest, to raise a valid

defense, namely self-defense, to the malicious wounding charge.  Under Virginia law, "a person

who reasonably apprehends bodily harm by another is privileged to exercise reasonable force to

repel the assault." *Diffendal v. Commonwealth*, 382 S.E.2d 24, 25 (Va. Ct. App. 1989).  Virginia

law recognizes two forms of self-defense:

> Justifiable self-defense arises when the defendant is completely without fault.  In
> such a case, the defendant need not retreat, but is permitted to stand his ground and
> repel the attack by force, including deadly force, if it is necessary.  Excusable self-
> defense arises when the defendant, who was at some fault in precipitating the
> difficulty, abandons the fight and retreats as far as he safely can before he attempts
> to repel the attack.

*Foote v. Commonwealth*, 396 S.E.2d 851, 855 (Va. Ct. App. 1990) (internal citations omitted).

Regardless of the type of self-defense, "the amount of force used to defend oneself must not be

excessive and must be reasonable in relation to the perceived threat." *Foster v. Commonwealth*,

412 S.E.2d 198, 200 (Va. Ct. App. 1991) (*citing Diffendal*, 382 S.E.2d at 26).  "Furthermore, an

individual's right to self-defend 'begins where the necessity begins and ends where it ends.'"

*Caison v. Commonwealth*, 663 S.E.2d 553, 561 (Va. Ct. App. 2008) (*quoting Thomason v.*

*Commonwealth*, 17 S.E.2d 374, 378 (Va. 1941)).

Here, Miles told Kmetz that he, along with a group of men, confronted Tidwell to retrieve

a ring and to address Tidwell's behavior toward Tatum.  During this confrontation, Tidwell

"presented" a hand gun, which turned out to be a fake plastic gun. (Miles Aff. 1.)  Miles

admitted that he successfully retrieved this gun and then continued to hit and kick Tidwell, using

the gun to strike Tidwell in the head with such force that remnants of the plastic became embedded in Tidwell's skin.

Considering these facts, Kmetz reasonably concluded that Miles, by initiating the confrontation, was partially at fault in precipitating the incident and that any excusable self-defense argument would be futile because Miles never retreated or abandoned the fight. *See Lynn v. Commonwealth*, 499 S.E.2d 1, 7-8 (Va. Ct. App. 1998); *Jordan v. Commonwealth*, 252 S.E.2d 323, 325 (Va. 1979). Further, given Miles's admission that he continued to strike and kick Tidwell after prying the gun away, Kmetz reasonably determined that any self-defense argument, whether excusable or justifiable, would fail because Miles used unreasonable force even after any justification for such force had ended. *See Caison*, 663 S.E.2d at 562; *Lynn*, 499 S.E.2d at 10. Ultimately, considering the facts known to Kmetz at the time, Miles fails to show that a self-defense argument was objectively reasonable or clearly suggested by the circumstances.

Miles also claims that Kmetz failed to interview Tatum due to a conflict of interest. According to Miles, Tatum would have confirmed that Miles, and the group of men accompanying him, confronted Tidwell due to his abusive behavior toward Tatum. She further would have confirmed that in response "Tidwell became violent and presented a gun that was taken from him." (Pet'r's Traverse & Objections 3.) The information Tatum possessed largely related to a self-defense argument, and Kmetz reasonably concluded that this information did not warrant further investigation.

Regardless, Miles fails to show a link between Kmetz's failure to pursue the self-defense argument and his prior representation of Tidwell. Miles attempts to demonstrate a link through

18

his conclusory statement that Kmetz's duty to keep Tidwell's confidences and secrets would have prevented Kmetz from presenting information on Tidwell's violent character or past criminal history. However, no inherent conflict exists between protecting confidential information obtained from a previous representation and using character evidence and/or public criminal records against a former, now-deceased client. Nevertheless, Miles cannot demonstrate that Kmetz's failure to argue self-defense resulted from his prior representation of Tidwell, rather than Kmetz's determination that such an argument would be futile.

### 4.    **Failure to Challenge the Robbery Charge**

Miles next challenges Kmetz's failure to raise a claim of right defense to the robbery charge. At their first meeting, Miles informed Kmetz that the property at issue in the robbery charge, the ring, belonged to Miles. Under Virginia law, robbery is "'the taking, with intent to steal, of the property of another, from his person or in his presence, against his will, by violence or intimidation.'" *Mills v. Commonwealth*, 662 S.E.2d 637, 638 (Va. Ct. App. 2008) (*quoting George v. Commonwealth*, 411 S.E.2d 12, 20 (Va. 1991)). "[A] *bona fide* claim of right could be a defense [to robbery] because it negates the criminal intent necessary to sustain th[e] offense[], that is, the intent to steal." *Strohecker v. Commonwealth*, 475 S.E.2d 844, 852 (Va. Ct. App. 1996); *see also Pollard v. Commonwealth*, No. 1424-01-2, 2002 WL 499289, at *1 (Va. Ct. App. Apr. 2, 2002) ("'To take property under a *bona fide* claim of right . . . is not robbery though the taking be accompanied by violence or putting in fear.'" (*quoting Pierce v. Commonwealth*, 138 S.E.2d 28, 31 (Va. 1964))). "[A] bona fide claim of right is a sincere, although perhaps mistaken, good faith belief that one has some legal right to [possess] the property." *O'Banion v. Commonwealth*, 531 S.E.2d 599, 603 (Va. Ct. App. 2000) (overruled on other grounds).

19

Aside from making the conclusory statement that the ring belonged to him, the record shows that Miles provided no further information to Kmetz as to how or why Tidwell possessed the ring. Miles has not provided enough facts to show that a claim of right defense was an objectively reasonable strategy under the facts known to Kmetz at the time. Further, presenting a defense based on a claim of right would necessitate Miles taking the stand, opening the door to his prior criminal history and attacks on his credibility. Miles had no viable defense to the drug charges, had admitted his involvement in a brutal group beating, had witnessed the murder of Tidwell, and could possibly be charged in that murder. Given the circumstances of the case, it was not objectively unreasonable for Kmetz to advise Miles to plead guilty and cooperate, in the hopes of receiving a more lenient sentence, rather than proceed to trial solely to challenge the robbery charge.

Moreover, Miles fails to point to any evidence suggesting a link between Kmetz's failure to pursue a claim of right defense and Kmetz's prior representation of Tidwell. *See United States v. Roane*, 378 F.3d 382, 400-01 (4th Cir. 2004) (observing "[a]iry generalities" cannot "stave off summary judgment") (alteration in original; internal quotation marks omitted). Kmetz represented Tidwell several years prior to Miles's case, and Tidwell was deceased at the time of Miles's case. Furthermore, Tidwell's prior convictions would be a matter of public record. Miles simply fails to demonstrate that zealously defending Miles would somehow jeopardize any professional relationship Kmetz had with Tidwell. *Cf. United States v. Burns*, 990 F.2d 1426, 1438 (4th Cir. 1993) ("We do not think that Burns's appointed attorney could have gleaned any advantage for himself in disciplinary proceedings before the state bar by failing to employ his best exertions on Burns's behalf at trial.")

20

5.      **Failure to Investigate the Veracity of Miles's Information Before Advising Miles to Cooperate**

Miles also challenges Kmetz's failure "to investigate the veracity of [Miles's] purported information concerning Tidwell's murder" prior to advising Miles to plead guilty and cooperate with the Commonwealth. (Pet'r's Traverse & Objections 4.)  However, a lawyer is "entitled to rely on the information provided by his client," and Kmetz's failure to second guess Miles's information concerning the murder was not objectively unreasonable. *Mickens*, 240 F.3d at 361. Nevertheless, Miles again can show no plausible link between this failure and Kmetz's prior representation of Tidwell.

6.      **Failure to Move to Withdraw Miles's Guilty Pleas**

Miles next contends that Kmetz failed to move to withdraw Miles's guilty pleas based on the Commonwealth's breach of the plea agreement.  However, as discussed above, Miles's current claim that a plea agreement as to sentencing existed directly contradicts his previous sworn statements and therefore will not be considered. *See infra* notes 8, 9.  Miles identifies no objectively reasonable ground clearly suggested by the circumstances on which to base a motion to withdraw his guilty pleas.  Further, Miles fails to demonstrate that Kmetz failed to take this action because of his prior representation of Tidwell.

7.      **Failure to File an Appeal**

Finally, Miles states that Kmetz refused to file an appeal, but makes no attempt whatsoever to link this failure to Kmetz's prior representation of Tidwell.  Indeed, no discernible inconsistency exists between filing an appeal on behalf of Miles and Kmetz's duty of loyalty to the victim.

## IV. Conclusion

The Supreme Court has emphasized, "until a defendant shows that his counsel *actively* represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." *Cuyler*, 446 U.S. at 350 (emphasis added) (*citing Glasser v. United States*, 315 U.S. 60, 72-75 (1942)). Miles has failed to demonstrate that Kmetz pursued his former client's interests to Miles's detriment. Kmetz failed to pursue the strategies or tactics identified by Miles because such tactics were not objectively reasonable under the circumstances and for reasons entirely unrelated to his prior representation of Tidwell. Accordingly, the Court will GRANT Respondent's Motion for Summary Judgment (Docket No. 29), Claim Three will be DISMISSED, Miles's § 2254 Petition will be DENIED, Miles's Motion for Hearing and Motion to Appoint Counsel will be DENIED AS MOOT (Docket Nos. 38, 39), and the action will be DISMISSED.

An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (*quoting Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).

No law or evidence suggests that Miles is entitled to further consideration in this matter.  A certificate of appealability is therefore DENIED.

An appropriate Order shall issue.

/s/

M. Hannah Lauck
United States Magistrate Judge

Richmond, Virginia
Date: 3-29-12

23